IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:21-cr-184-CCW |
| v. | |
| RODERICK KING, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER ON PRETRIAL MOTIONS**

Pending before the Court are four motions in limine by the United States and two motions by pro se Defendant Roderick King. For the reasons set forth below, the Court resolves these motions as follows:

- The United States' Motion in Limine Regarding the Use of Transcripts, ECF No. 145, is GRANTED;

- The United States' Motion in Limine Regarding Penalties and/or Possible Sentences, ECF No. 146, is GRANTED;

- The United States' Motion in Limine Regarding Apple, Google, and PNC Bank Business Records, ECF No. 147, is GRANTED;

- The United States' Motion in Limine Regarding Snapchat and Facebook Records at Trial, ECF No. 150, is DEFERRED;

- Mr. King's Motion to Compel Court Order for Jail Calls, ECF No. 159, is DENIED; and

1

- Mr. King's Motion for Pre-Trial Determination of Authentication of Snapchat Records, ECF No. 158, is DENIED without prejudice.

## I. BACKGROUND

On April 27, 2021, Mr. King was charged in a three-count indictment with Sex Trafficking of a Child and Attempted Sex Trafficking of Child, in violation of 18 U.S.C. §§ 1591(a)(1), 1592(b)(2), and 1594(a) (Count I); and Production of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) (Counts II and III).

Previously, Mr. King, at the final pretrial conference on March 15, 2022 for the March 21, 2022 trial date, elected to proceed *pro se*. *See* ECF Nos. 61, 98 & 99. To allow Mr. King to prepare for trial, and because Mr. King declined to agree to certain stipulations of fact entered into by his then-counsel, trial of this case was reset to begin on July 5, 2022. *See* ECF Nos. 100 & 101. The Court set May 25, 2022, as the deadlines for the parties' pretrial motions in limine. ECF No. 100. Instead of filing the applicable pretrial submissions, the United States filed a Motion for Competency Examination and a Motion to Stay Trial Deadlines, ECF Nos. 119 & 120, which the Court denied during a conference on June 2, 2022. ECF No. 129. The Court issued an amended final pretrial order that set June 10, 2022 as the deadline for the parties' pretrial motions in limine,[1] which was then extended to June 13, 2022. ECF Nos. 130 & 135. The United States filed four motions in limine, ECF Nos. 145, 146, 147, & 150, and the Court has not received any writing from Mr. King in response to such motions. Mr. King filed a Motion to Compel Court Order for Jail Calls, ECF No. 159, and a Motion for Pre-Trial Determination of Authentication of Snapchat Records, ECF No. 158, to which the United States has responded. ECF Nos. 163 & 164.

---

[1] As indicated by the amended final pretrial order, "[t]he parties' prior motions in limine, e.g. ECF No. 71 & 72, and the court's Order on those motions at ECF No. 82 remain in effect unless the parties file revised motions in limine implicating those topics." *See* ECF No. 130 ¶ 5. No such revised motions implicating those topics were filed.

## II.       Analysis

### A.       The United States' Motion in Limine Regarding the Use of Transcripts, ECF No. 145, Will Be Granted

The Government seeks permission to use the transcripts of recorded audio communications between a confidential human source and Mr. King during its case in chief, and if necessary, during cross examination, and for the jury to use the transcripts as an aid during its deliberations. ECF No. 145. The United States represents that it has prepared written transcripts of these entire recorded conversations between a confidential human source and the Mr. King and that copies of the transcripts in their entirety have been provided to Mr. King. *Id.*

The United States asserts that the transcripts will be helpful when the jury reviews the actual corresponding audio recordings during trial and deliberations as a listening aid to assist in the accurate, timely, and effective understanding of the speakers and content of the audio communications. ECF No. 145 at 1–2.

In the United States' status report following its meet and confer with Mr. King, the United States indicated that Mr. King would consider and respond to this Motion. ECF No. 155 ¶ 11(a). During the final pretrial conference held on June 22, 2022, Mr. King indicated that he had nothing to say about the United States' Motion. ECF No. 165. The Court has not received anything in writing from Mr. King on this Motion.

In its discretion, a trial court may allow the use of a transcript as a listening aid but should advise the jury as to the limited role to be served by the transcript—specifically that the audio material is the evidence, whereas the transcript is an aid in listening. *See United States v. LaBoy*, 505 F. App'x 182, 184 (3d Cir. 2012) (no abuse of discretion when providing a limiting instruction that the transcript was not evidence, but merely an aid to assist in viewing the recording); *United*

*States v. Houser*, 413 F. App'x 476, 479–80 (3d Cir. 2011) (finding no abuse of discretion when the district court instructed jury that the transcripts accompanying the audio during trial and during jury deliberations were not evidence); *United States v. O'Grady*, 280 F. App'x 124 (3d Cir. 2008) (finding no abuse of discretion when the district court provided the deliberating jury with transcripts of recordings played during trial without the recordings and a tape player, because nothing indicated that "the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affect defendant's rights in the event the jury had relied upon it," and that district court "repeatedly told the jury that the actual recordings would be available upon request and that the jury should rely on the actual recordings in the event of any inconsistency.").

Judges in this District have permitted the use of transcript as a listening aid during trial and deliberations. *See United States v. Thomas Hopes, et al.*, Crim. Nos. 13-cr-0057, 13-cr-0058, Doc. No. 465 (W.D. Pa. Sept. 11, 2015) (Bissoon, J.); *United States v. Curran*, No. 09-cr-0325, 2011 U.S. Dist. LEXIS 85885, at *5–6 (W.D. Pa. Aug. 4, 2011) (McVerry, J.); *United States v. Rodgers*, No. 12-cr-162, 2014 U.S. Dist. LEXIS 102321 (W.D. Pa. July 28, 2014) (McVerry, J); *United States v. Manghan*, No. 11-0045, 2012 U.S. Dist. LEXIS 199131, at *6–7, 10–11 (W.D. Pa. Oct. 16, 2012) (Schwab, J.); *United States v. Bacon*, No. 11-0042, 2012 U.S. Dist. LEXIS 155736 (W.D. Pa. Oct. 31, 2012) (Schwab, J.); *United States v. Gary Moorefield, et al.*, No. 10-CR-187, Doc. No. 587 (W.D. Pa. Aug. 30, 2012) (Ambrose, J.).

For the foregoing reasons, and in light of Mr. King's non-objection to this Motion, the United States' Motion will be **GRANTED**, such that the jury will be permitted to use the transcripts as a guide when listening to the recordings during trial and during deliberations. The Court will provide Third Circuit Model Criminal Jury Instructions 2.07 and 4.06, which instruct

4

the jury that the written transcripts of the audio recordings are not evidence and that if any differences arise between what the jury hears on the recordings and what the jury reads in the transcripts, the jury must rely on what it heard, not what it read.

### B. The United States' Motion in Limine Regarding Penalties and/or Possible Sentences, ECF No. 146, Will Be Granted

The United States seeks to preclude the defense from referring, either directly or indirectly, to the potential penalties, the statutory minimum or maximum, or possible sentencing range upon conviction in the presence of the jury. ECF No. 146.

Mr. King did not raise an objection to this Motion during his meet and confer with the United States, *see* ECF No. 155 ¶ 11(b) or during the final pretrial conference. ECF No. 165. Further, the Court has not received anything in writing from Mr. King on this Motion and the parties have filed a joint stipulation this issue. ECF No. 169.

As summarized in *Shannon v. United States*,

> It is well established that when a jury has no sentencing function, admonished to "reach its verdict without regard to what sentence might be imposed."… The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion….

512 U.S. 573, 114 S. Ct. 2419 (1994) (internal citations omitted).

The Court finds that it would be improper for the defense to refer to such topics during the course of the trial. *See United States v. Rodgers*, No. 2:12-cr-162, 2014 U.S. Dist. LEXIS 102321 at *10 (W.D. Pa. July 28, 2014) (McVerry, J.); *United States v. Japalucci*, No. 02:07-cr-363, 2008

U.S. Dist. LEXIS 32075, at *8 (W.D. Pa. Apr. 17, 2008) (McVerry, J.); *United States v. Totoro*, No. 15-291, 2017 U.S. Dist. LEXIS 117371, at *31 (E.D. Pa. July 27, 2017).

Thus, the United States' Motion in Limine Regarding Penalties and/or Possible Sentences, ECF No. 146, will be GRANTED and the defense is precluded from referring, either directly or indirectly, to the potential penalties, the statutory minimum or maximum, or possible sentencing range upon conviction in the presence of the jury.

### C. The United States' Motion in Limine Regarding Apple, Google, and PNC Bank Business Records, ECF No. 147, Will Be Granted

The United States contends that certain exhibits accompanied by a business records certification of authenticity meet the requirements for self-authentication under Federal Rule of Evidence 902(11) and admissibility under Rule 803(6), and therefore that the Court should enter an order admitting these documents into evidence. ECF No. 147. The United States represents that the following proposed exhibits were received from the named entity with a business records certification of authenticity, which has been attached to the motion.

- Proposed Exhibit 2 was received from Google, which provided a business records certification of authenticity dated December 17, 2020. ECF No. 147-1.
- Proposed Exhibits 3, 4, 6, and 7 were received from Google, which provided a business records certification of authenticity dated December 21, 2020. ECF No. 147-2.
- Proposed Exhibit 5 was received from Apple, which provided a business records certification of authenticity dated December 14, 2020. ECF No. 147-3.
- Proposed Exhibit 8 was received from PNC Bank, which provided a business records certification of authenticity dated January 28, 2021. ECF No. 147-4.

During the June 22, 2022 Pretrial Conference, the United States also indicated that Proposed Exhibit 1 which consists of subscriber records obtained from Snapchat, is also self-authenticating and admissible. ECF No. 165. Following such discussions, the United States filed a supplement to its Motion, attaching a business records certification of authenticity dated December 15, 2020 for Proposed Exhibit 1. *See* ECF No. 162 & 162-1.

The Court has not received anything in writing from Mr. King on this Motion. During the final pretrial conference, Mr. King argued that he did not believe that there was probable cause for the United States to receive these records. He argued that he believes that the Homeland Security agent listened to certain jail calls, which then prompted her to investigate these accounts, rather than learning of these accounts from the minor victim. Mr. King further contends that he is not the person behind the Gmail records. Mr. King also argued that United States did not have probable cause for the certificates of authenticity that correspond to the subscriber records. Based on discussions during the final pretrial conference and the Court's review of the Joint Exhibit List, ECF No. 156-1, and the Motion, the corresponding certificates of authenticity at issue with respect to this Motion appear to be Proposed Exhibits 28, 29, 30, & 31 and ECF No. 162-1.

As a preliminary matter, the Court first addresses Mr. King's arguments that Proposed Exhibits 1 through 8 (and corresponding certificates of authenticity in Proposed Exhibits 28, 29, 30, 31 and ECF No. 162-1) are unsupported by probable cause. The Court views Mr. King's argument referencing "probable cause," as an argument that his Fourth Amendment rights against unreasonable search were violated when the United States obtained Proposed Exhibits 1 through 8 (and corresponding certificates of authenticity).

The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)). However, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter v.*

*United States*, 138 S. Ct. 2206, 2216–17 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979)).

The Court of Appeals for the Third Circuit has noted that "[f]ederal courts have uniformly held that 'subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation' because it is voluntarily conveyed to third parties," and that no reasonable expectation of privacy exists in such information. *United States v. Christie*, 624 F.3d 558, 573–74 (3d Cir. 2010). As an exception, not applicable here, Supreme Court's ruling in *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018),

More recently, Circuit Courts have found that the United States Supreme Court's 2018 decision in *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018), does not apply to subscriber information disclosed during ordinary use of the internet, such as internet protocol addresses and email addresses. *United States v. Trader*, 981 F.3d 961, 968 (collecting cases). In *United States v. Trader*, the Eleventh Circuit found that *Carpenter*'s holding was inapplicable to the internet protocol address and email address that the United States had requested from an online application used by defendant to send child pornography to young girls and to solicit nude photos and videos from them. *Id.* at 964, 967–69.

Thus, the Court rejects Mr. King's argument that the various subscriber records and their accompanying certificates of authenticity violated his Fourth Amendment right because there was an asserted lack of probable cause.[2]

Next, the Court turns to the issue of whether Proposed Exhibits 1 through 8 are self-authenticating and admissible under Rules 902(11) and 803(6) of the Federal Rules of Evidence.

---

[2] The Court's analysis regarding probable cause applies equally to Mr. King's probable cause objection raised during the final pre-trial conference to Proposed Exhibits 26, 27, and 32.

Although not articulated during the final pretrial conference, the previously-filed Joint Exhibit List indicated that Mr. King objected to these exhibits on the ground that the "business records [exception is] not satisfied." ECF No. 156-1 at 1. For the reasons that follow, Mr. King's objection on such ground will be overruled.

Federal Rule of Evidence 901(a) requires the authentication of evidence prior to its admission. "The standard for authenticating evidence is 'slight,'…. and may be satisfied by 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013). A business record (more recently referred to as a record of a regularly conducted activity) is admissible as an exception to the hearsay rules if the record was "'made at or near the time by ... a person with knowledge, if kept in the ordinary course of a regularly conducted business activity, and if it was the regular practice of that business activity to make' the records." *United States v. Jimenez*, 513 F.3d 62, 77 (3d Cir. 2008) (quoting Fed. R. Evid. 803(6)). Such a record "may be authenticated through witness testimony or the use of written certifications that comply with Rule 902(11), including that pretrial notice of the certification and an opportunity to challenge same is provided to the opponent." *United States v. Kubini*, 304 F.R.D. 208, 217 (W.D. Pa. 2015) (Fischer, J.).

Under Federal Rule of Evidence 902(11), a record of a regularly conducted activity "that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person…" is self-authenticating such that it requires no extrinsic evidence of authenticity in order to be admitted. Fed. R. Evid. 902(11). "Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record— and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." *Id.* In this case, the United States has provided notice of its

intention by filing its written motion and the certifications, and by representing that Mr. King has been provided a copy of the certifications and records received from Google, Apple, and PNC Bank. ECF No. 174.

Here, each of the certificates, proposed Exhibits 28, 29, 30, & 31 and ECF No. 162-1 (*see also* ECF Nos. 147-1, 147-2, 147-3, 147-4, & 162-1) contain a certification from a custodian representing that he or she is authorized and qualified to authenticate the relevant record of a regularly conducted activity, and that such record was made at or near the time by—or from information transmitted by—someone with knowledge, was kept in the course of a regularly conducted activity, and the making of such record was a regular practice of that activity. *See* Exhibits 28, 29, 30, & 31; *see also* ECF Nos. 147-1 at 2, 147-2 at 1, 147-3 at 1, & 147-4 at 1, & 162-1 at 2.

Thus, the United States' Motion in Limine Regarding Apple, Google, and PNC Bank Business Records, ECF No. 147, (as amended by the supplement at ECF No. 162) will be GRANTED, such that Proposed Exhibits 1 through 8 are admissible pursuant to Federal Rules of Evidence 803(6) and 902(11).

### D. The United States' Motion in Limine Regarding Snapchat and Facebook Records at Trial, ECF No. 150, is Deferred

The United States seeks to admit the content of Snapchat and Facebook records (proposed Exhibits 10, 16.1[3], 17, 18.1[4], and 21). ECF No. 150. In its motion, the United States set forth the expected testimony of the minor victim, which, it contends, when combined with distinctive characteristics of the proposed exhibits and along with accompanying certificates of authenticity,

---

[3] Although listed as Exhibit 16, the United States confirmed during the final pretrial conference that the actual exhibit number is Exhibit 16**.1** (Snapchat Video at Mall (video)). ECF No. 156 at 3; ECF No. 165.
[4] Although listed as Exhibit 18, the United States confirmed during the final pretrial conference that the actual exhibit number is Exhibit 18**.1** (Snapchat Video in Truck (video)). ECF No. 156 at 3; ECF No. 165.

are sufficient to provide an evidentiary basis for authentication under Rule 901(a). *Id.* The Court has not received anything in writing from Mr. King on this Motion.

During the final pretrial conference, Mr. King argued that the United States should not be permitted to move for the admissibility for these exhibits without a custodian of record to testify. Mr. King contends that determining admissibility before such custodian has testified would be unfair because during the previous final pretrial conference on March 15, 2022, after the Court granted his request to proceed *pro se*, he withdrew from prior stipulations regarding the authentication of certain exhibits and waived his Speedy Trial Act Rights. His waiver, he argues, was based on the idea that the withdrawal of the stipulations would not permit the parties to proceed with the jury trial as previously scheduled on March 21, 2022. ECF No. 98 & 101. Mr. King's arguments related to his waiver of his Speedy Trial Act Rights are not germane to either the authenticity or the admissibility of these specific exhibits.

Finally, at the final pretrial conference, Mr. King argued that the Motion states that testimony will authenticate these exhibits under Rule 901(a), and since no testimony was heard regarding these exhibits or the distinctive characteristics, they cannot be admitted. Rule 901(a) regarding authentication "treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of Rule 104(b)." *United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016). Rule 104(b), in turn, provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." *Id.* (citing Fed. R. Evid. 104(b)). "[T]o meet the Rule 104(b) standard of sufficiency, the proponent of the evidence must show that "the jury could reasonably find th[ose] facts … by a preponderance of the evidence." *Id.* at 409–10 (citing *United States v. Bergrin*, 682 F.3d 261, 278 (3d Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S.

11

681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1998)) (alterations in original).  Here, the relevance of the social media messages hinges on the fact of authorship—that is, whether Mr. King is the author.

Confronted with the issue of authentication of social media communications, the Third Circuit in *United States v. Browne* concluded that social media communications, the relevance of which hinged on the authorship, were not business records that may be "self-authenticated" by way of a certificate from a records custodian under Federal Rule of Evidence 902(11).  *Browne*, 834 F.3d at 408–11.  Here, the United States acknowledges that *Browne* does not permit the admission of Proposed Exhibits 10, 16.1, 17, 18.1, and 21 as self-authenticating records of a regularly conducted activity.  ECF No. 150 at 2.

In *Browne*, the Third Circuit continued its authentication analysis by considering "whether the Government has presented sufficient extrinsic evidence to authenticate the chat logs under Rule 901(a)."  834 F.3d at 411.  The Third Circuit found that the "wide range of extrinsic evidence" that was conventionally used to establish authorship for document authentication is equally applicable to the authentication of social media records.  *Id.* at 412.  "Depending on the circumstances of the case, a variety of factors could help support or diminish the proponent's claims as to the authenticity of a document allegedly derived from a social media website, and the Rules of Evidence provide the courts with the appropriate framework within which to conduct that analysis."  *Id.* at 412–13 (internal citations omitted) (noting the Courts of Appeals that have considered the issue have reached the same conclusion); *see also id.* at 415 ("[a]lthough a witness with personal knowledge may authenticate a document by testifying that the document is what the evidence proponent claims it to be, this is merely one possible means of authentication and not… an exclusive requirement.").

The United States' Motion in Limine outlines the extrinsic evidence—testimony, distinctive characteristics of messages, and certificates of authenticity—that it contends will show that Mr. King was the holder of the relevant account and the author of all relevant chats. *See generally*, ECF No. 150.

Although under Rule 104(b), the Court "may admit the proposed evidence on the condition that the proof be introduced later," the Court will DEFER any ruling on admissibility of Proposed Exhibits 10, 16.1, 17, 18.1, and 21 until the time of trial if and when there is the introduction of proof sufficient to support a finding that Mr. King is the author of such exhibits.

### E.     Mr. King's Motion to Compel Court Order for Jail Calls, ECF No. 159, Will Be Denied

Mr. King seeks to compel "a copy of the subpoena or court order that is responsible for obtaining the jail calls that are listed on the trial exhibit list." ECF No. 159. The jail calls are Exhibits 11.1, 11.2, 11.3, and 11.4. *See* ECF No. 156-1. Mr. King contends that he was in jail for an unrelated charge when the calls were recorded, and that the United States would have needed a legitimate reason (probable cause) to obtain the calls. *Id.* Mr. King also cites Federal Rule of Criminal Procedure 17 for the proposition that the government is not permitted "to invite pretrial production of recorded jail calls absent Court approval." *Id.*

The United States acknowledges that it does not have a subpoena or court order for the jail calls from Calloway County Jail and that it has articulated this to Mr. King on multiple occasions. ECF No. 163 at 1 (citing "via with prior counsel, in filings with the Court (See ECF No. 126), and during the three (3) hour videoconference between undersigned counsel and pro se Defendant King."). The United States contends that Mr. King's citation to a Department of Corrections ("DOC") "FOIA Program Manual" as his basis for the need for a court order or subpoena is

13

inapplicable because the Calloway County Jail is not a DOC or Bureau of Prisons ("BOP") facility. *Id.* at 1–2.

The Court will **DENY** Mr. King's Motion to Compel as **MOOT** as the United States has represented that no such subpoena or court order exists.[5]  ECF No. 163 at 1.

To the extent that Mr. King's Motion also argues that the United States obtained the jail calls in violation of his Fourth Amendment rights,[6] the Court will **DENY** Mr. King's Motions on those grounds as well.  As the United States argues, even if Calloway County Jail was a DOC or BOP facility, any "purported 'violation' would not amount to a violation of pro se Defendant King's Fourth Amendment rights," because inmates do not have a reasonable expectation of privacy in their recorded jail calls, particularly when they are given notice that the calls are recorded.  ECF No. 163 at 1–2.

As discussed above, the Fourth Amendment of the United States Constitution protects individuals from "unreasonable searches and seizures," U.S. Const. amend. IV, which asks whether a person has a 'constitutionally protected reasonable expectation of privacy.'"  *Oliver v. United States*, 466 U.S. 170, 177 (1984) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)).

"The United States Court of Appeals for the Third Circuit has held that inmates, and the people with whom they confer over monitored jail telephones, lack an objectively reasonable expectation of privacy in recorded jail calls where the facts showed that they were aware that the calls were monitored and recorded, evidencing that the inmate impliedly consented to same

---

[5] Because no such subpoena exists, Rule 17 is inapplicable.  *See United States v. Ewell*, No. 13-125, 2016 U.S. Dist. LEXIS 15040, at *24–28 (W.D. Pa. Feb. 8, 2016) (Fischer, J.) (discussing the applicability of Rule 17 and concluding that "Rule 17 only governs subpoenas issued under the seal of this Court and signed by the Clerk of Court.").
[6] The Court liberally construes Mr. King's objections as a violation of the Fourth Amendment due to Mr. King's reference to the concept of "probable cause" in his motion.

14

through his use of the jail phones." *United States v. Ewell*, No. 13-125, 2016 U.S. Dist. LEXIS 15040, at 32–33* (W.D. Pa. Feb. 8, 2016) (Fischer, J.) (collecting cases).

Here, the United States represents that the jail calls that they seek to introduce at trial in redacted form contain, in unredacted form, a message that is automated and advises the parties of the call that "all phone calls are subjected to monitoring and recording." ECF No. 163 at 2 n.1.

Given this prerecorded message, the Court finds that Mr. King lacks an objectively reasonable expectation of privacy in recorded jail calls made or received while he has been held at Calloway County jail, such that any Fourth Amendment challenge is **DENIED**.

### F. Mr. King's Motion for Pre-Trial Determination of Authentication of Snapchat Records, ECF No. 158, Will Be Denied Without Prejudice

Mr. King filed Motion for Pre-Trial Determination of Authentication of Snapchat Records, ECF No. 158. In his motion, Mr. King makes several arguments regarding different Snapchat exhibits:

- With respect to Snapchat messages generally, he notes that every time that a picture is sent a message that there is "no message content to display." ECF No. 158 ¶ 2. From this, he concludes that such messages were retrieved from Snap Inc. and not the minor victim's mobile device, and if Snap Inc. does not archive any pictures, video, or sound, the United States has not met its burden to show that interstate of foreign commerce was used. *Id.*

- With respect to Exhibit 10 (Snapchat Chat Messages between Minor Victim and Mr. King), Mr. King asserts that the United States has not produced an "extraction report" of the minor victim's phone. *Id.*

- With respect to Exhibits 13 and 14 (Videos Underlying Counts Two and Three, respectively),[7] Mr. King alleges there is no date on these exhibits. *Id.*
- With respect to Exhibit 26 (Snapchat Certificate of Authenticity), Mr. King contends that this document, which was prior to his indictment, should have been produced with his Rule 16.1 material, therefore questions the Snapchat records and the Certificate of Authenticity. *Id.*

None of Mr. King's arguments bear on authentication, the standard for which the Court has set forth above. That is, (1) what material archived Snapchat messages should display, (2) the existence of an "extraction report," and (3) whether certain exhibits are dated, are all arguments that go to the weight the evidence should be given and, as Mr. King argues, whether the government can meet its burden to prove each element of the charges. Mr. King will have the opportunity to cross-examine the Government's witnesses on these and other issues at trial.

The issues raised by Mr. King also do not mean that the United States will be unable to authenticate the challenged evidence at trial. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). To meet its obligation to authenticate the evidence, the United States can, for example, elicit testimony from a witness with knowledge of the evidence or evidence of distinctive characteristics. *See* Fed. R. Evid. 901(b). This burden is "slight," *see supra* Section II.C, and none of Mr. King's arguments demonstrate that the United States will, in all cases, be unable to meet it at trial.

---

[7] The admissibility of such exhibits under Rule 403 is addressed in the following opinion, *see* ECF No. 175.

Finally, even if the Snapchat Certificate of Authenticity in Exhibit 26 was subject to a request under Federal Rule of Criminal Procedure 16(a)(1)(E) (relating to documents and objects), which the Court need not decide at this time, Rule 16(d)(2) provides only that the Court "may order [the non-disclosing party] to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." That is, whether to impose any sanction at all for a Rule 16 violation is within the Court's discretion, *see United States v. Lopez*, 271 F.3d 472, 483 (3d Cir. 2001), and exercise of that discretion turns on whether the Defendant has shown the nondisclosure was prejudicial. *Id.* at 483–84. In response to an earlier discovery motion by Mr. King, the United States represented that Mr. King "rejected any stipulations regarding the authenticity of the Snapchat records" thereby "requiring the United States to produce a witness to certify as to the authenticity rather than submit a certification form." ECF No. 126 at 12; *see also* ECF No. 164 ("The United States has already addressed in its response to a separate motion for discovery, Defendant King's concern regarding the Snapchat business record certification."). Given that it appears the United States does not intend to use Exhibit 26 alone to authenticate the Snapchat Records, and because Mr. King has not articulated how the allegedly untimely production of Exhibit 26 is prejudicial, the Court concludes that no sanction under Rule 16(d)(2) is warranted here. *See, e.g, United States v. Kerr,* No. 3:2007-3, 2008 U.S. Dist. LEXIS 37240 (W.D. Pa. May 2, 2008)*; United States v. Hodge, No. 2016-0009,* 2018 U.S. Dist. LEXIS 84333 (D.V.I. May 20, 2018).

In sum, therefore, because Mr. King's arguments do not actually present a challenge to the United States' ability to authenticate the Snapchat Records, Mr. King's Motion, ECF No. 158, will be DENIED WITHOUT PREJUDICE. Mr. King may, of course, renew his objections at trial to

17

the extent he believes the United States has not met its burden under Rule 901 to authenticate the challenged records.

### III.     Conclusion

For the foregoing reasons, the Court resolves the parties' Motions as follows:

- The United States' Motion in Limine Regarding the Use of Transcripts, ECF No. 145, is **GRANTED**, such that the jury will be permitted to use the transcripts as a guide when listening to the recordings during trial and during deliberations and the Court will provide Third Circuit Model Criminal Jury Instructions 2.07 and 4.06.

- The United States' Motion in Limine Regarding Penalties and/or Possible Sentences, ECF No. 146, is **GRANTED**, such that the defense is precluded from referring, either directly or indirectly, to the potential penalties, the statutory minimum or maximum, or possible sentencing range upon conviction in the presence of the jury.

- The United States' Motion in Limine Regarding Apple, Google, and PNC Bank Business Records, ECF No. 147 (as amended by the supplement at ECF No. 162), is **GRANTED** such that Proposed Exhibits 1 through 8 are admitted into evidence pursuant to Federal Rules of Evidence 803(6) and 902(11);  and

- The United States' Motion in Limine Regarding Snapchat and Facebook Records at Trial, ECF No. 150, is **DEFERRED**, such that the introduction of Proposed Exhibits 10, 16.1, 17, 18.1, and 21 at trial is subject to the introduction of proof sufficient to support a finding that Mr. King is the author of those Proposed Exhibits;

- Mr. King's Motion to Compel Court Order for Jail Calls, ECF No. 159, is **DENIED** as moot and to the extent the Motion is construed to articulate a Fourth Amendment violation, it is **DENIED**; and

- Mr. King's Motion for Pre-Trial Determination of Authentication of Snapchat Records, ECF No. 158, is **DENIED WITHOUT PREJUDICE**.

DATED this 29th day of June, 2022.

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

cc (via United States Mail):

Roderick King
Inmate 21-01129
Cambria County Prison
425 Manor Drive
Ebensburg, PA 15931