IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RODERICK KING,

Defendant.

2:21-CR-184-CCW

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Defendant Roderick King's (1) Motion to Dismiss [the] Indictment for Rule 5 Violations/Illegal Detention, ECF No. 193; and (2) Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, ECF No. 195.  Mr. King's Motions have been fully briefed and are therefore ripe for disposition.  For the reasons that follow, each of Mr. King's Motions will be DENIED.

### I.      Relevant Procedural Background

On April 27, 2021, Mr. King was charged in a three-count indictment with Sex Trafficking of a Child and Attempted Sex Trafficking of Child, in violation of 18 U.S.C. §§ 1591(a)(1), 1592(b)(2), and 1594(a) (Count One);   and Production of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) (Counts Two and Three).  *See* ECF No. 1.  At the time of his indictment, Mr. King was being held at the Clarion County Jail on unrelated state charges, pending sentencing.  The state court issued its sentence on Mr. King's state law charges on June 9, 2021.  On May 12, 2021, Magistrate Judge Dodge granted the United States' Motion for Writ of Habeas Corpus *ad prosequendum* so that Mr. King could be brought into federal custody for his initial appearance in federal court on the federal indictment.  *See* ECF

Nos. 6–8.  The United States requested that Mr. King be detained pending his federal trial.  *See* ECF No. 10.  Mr. King's initial appearance and arraignment were held before Magistrate Judge Dodge on June 10, 2021, at which time Mr. King, through his then-counsel, pled not guilty and waived a detention hearing.  *See* ECF Nos. 13–16.  After a change in counsel, Mr. King, at the final pre-trial conference on March 15, 2022, elected to proceed *pro se*.  *See* ECF Nos. 98–99.  In order to allow Mr. King to prepare for trial, and because Mr. King declined to agree to certain stipulations of fact entered into by his previous counsel, trial of this case was reset to commence on July 5, 2022.  *See* ECF Nos. 100–101.

The jury trial began on July 5, 2022 and on July 8, 2022, the jury rendered its verdict and found Mr. King guilty on all three counts in the Indictment.  ECF No.  190.

On July 11, 2022, the Court received Mr. King's Motion to Dismiss [The] Indictment for Rule 5 Violations/Illegal Detention (post-marked July 6, 2022).  ECF No. 193.  On July 14, 2022, the Court received Mr. King's Motion for Judgment of Acquittal (post-marked July 11, 2022).  ECF No. 195.  The United States responded to both motions, ECF No. 197, which are now ripe for disposition.

## II.    Mr. King's Motion to Dismiss [the] Indictment for Rule 5 Violations/Illegal Detention Will Be Denied

Mr. King's Motion to Dismiss [the] Indictment for Rule 5 Violations/Illegal Detention, ECF No. 193 alleges that:  on "April 28, 2021 an arrest warrant out of the Western District of PA was served and executed on Defendant Roderick King";  that on June 9, 2021, he "was brought to federal custody via 'writ ad' with no detainer";  and that he "was produced before a federal magistrate [judge] for the indictment charges (close to  42 days after [the] arrest warrant was executed…)."  ECF No.  193 at 1.  Mr. King further alleges that he "did NOT receive a detention order until on or around October 1, 2021."  *Id.*  Finally, he contends that in light of the United

States' "cunning plan to suppress [his] rights," the "only remedy for these unlawful actions is dismissal of [the] indictment." *Id.*

The United States responds that Mr. King's motion is untimely, *see* ECF No. 197 at 4 n.1, and that the motion also fails on the merits because "Mr. King was brought before United States Magistrate Judge Dodge on the same day that the federal arrest warranted was executed – that is, June 10, 2021, the date of his initial appearance." *See id.* at 4–6 (detailing procedural history).

The Court need not decide if Mr. King's Motion succeeds on the merits because it fails on two procedural grounds.

"First, the remedy for a violation of Rule 5 is suppression of evidence produced or 'statements taken during the period of unnecessary delay,' not dismissal of the indictment." *United States v. Colburn*, 401 F. App'x 706, 708 (3d Cir. 2010) (citing *United States v. Dyer*, 325 F.3d 464, 470 n.2 (3d Cir. 2003 (citing *Govt. of the Virgin Islands v. Gereau*, 502 F.2d 914, 923 n.5, 11 V.I. 265 (3d Cir. 1974)). Here, Mr. King does not identify any statements or evidence which were taken during any alleged period of delay, thus Mr. King does not appear to be entitled to any relief. *Id.*

Second, Mr. King's Motion to Dismiss [The] Indictment for Rule 5 Violations/Illegal Detention falls under Rule 12(b)(3) of the Federal Rules of Criminal Procedure. Under Rule 12(b)(3)(A), a "motion alleging a defect in instituting the prosecution" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

Here, Mr. King's trial began on July 5, 2022, and his motion was post-marked July 6, 2022. Mr. King has not articulated any good cause for why his motion should not be dismissed as untimely, especially given the significant elapsed time between his indictment (April 2021), his detention hearing (October 2021), his election to proceed *pro se* (March 2022), and his trial start date (July 5, 2022). Indeed, Mr. King raised unrelated arguments regarding alleged defects in the institution of the prosecution against him in a pretrial motion received on May 5, 2022 (postmarked May 2, 2022). *See* ECF No. 108. Specifically, Mr. King sought dismissal of a non-existent "criminal complaint" for various reasons. *See id.* Notably, Mr. King did not raise any of the process-related arguments he now asserts in that pretrial filing. *See id.* As such, even if Mr. King had identified an appropriate remedy (he has not), his Motion to Dismiss [the] Indictment for Rule 5 Violations/Illegal Detention would still be denied as untimely.

### III.    Mr. King's Motion for Judgment of Acquittal Will Be Denied

On July 11, 2022, three days after the jury found him guilty on all counts, *see* ECF No. 190, Mr. King filed a timely Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* ECF No. 195. Under Rule 29, the Court must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29;  *see also United States v. John-Baptiste*, 747 F.3d 186, 200 n.8 (3d Cir. 2014) ("'[T]he Rule 29 judgment of acquittal is a substantive [judicial] determination that the prosecution has failed to carry its burden.'") (quoting *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005)). "A defendant 'challenging the sufficiency of the evidence' pursuant to Rule 29 'bears a heavy burden.'" *John-Baptiste*, 747 F.3d at 201 (quoting *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992)).

In resolving a Rule 29 motion, the court must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the evidence

presented at trial. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013) (*en banc*) ("[O]ur review for sufficiency [of the evidence] is…highly deferential, and we will overturn a verdict only 'if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.'") (quoting *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)). The Court is not permitted weigh credibility or assess the weight of the evidence. *Caballo-Rodriguez*, 726 F.3d at 430 (noting that a reviewing court "'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury.'") (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). Rather, the Court is required to view the evidence in this light most favorable to the prosecution and must deny the motion "if there is substantial evidence…to uphold the jury's decision." *Caballo-Rodriguez*, 726 F.3d at 430. As such, a Rule 29 motion should be granted, and a judgment of acquittal entered, only "where the prosecution's failure is clear," *United States v. Leon*, 739 F.2d 885, 890–91 (3d Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)), or where the jury's verdict "fall[s] below the threshold of bare rationality." *Caballo-Rodriguez*, 726 F.3d at 431.

In his Motion, Mr. King returns to a theme that dominated his strategy at trial: disputing the kinds of predicate evidence necessary to sufficiently authenticate the Snapchat and Facebook communications (including the videos depicting Mr. King having sex with the Minor Victim ("MV")) presented by the prosecution at trial. *See* ECF No. 195. In general, Mr. King argues that because, in his estimation, the prosecution did not sufficiently authenticate these messages and videos, the evidence should not have been admitted and, with its exclusion, the prosecution failed to meet its burden to prove a nexus between Mr. King's conduct and interstate commerce. *See id.* Mr. King advances three specific claims along these lines. The Court will address each in turn.

First, Mr. King contends that "to prove interstate or foreign commerce for Count I [i.e., Sex Trafficking and Attempted Sex Trafficking of a Child, in violation of 18 U.S.C. §§ 1591(a)(1), 1592(b)(2), and 1594(a)], the government would [have] needed to show first, the Snapchat conversations occurred. In order to prove this, the government needed to bring a Snap, Inc., custodian of records at trial to show a conversation happened between the two account id's." ECF No. 195 ¶ 1. Mr. King argues that such a records custodian was necessary because the custodian would have been a "person with personal knowledge" and because "these conversations was [sic] supposed to be produced from the third[-]party custodian." *Id.* Mr. King reasons that this means the messages presented to the jury "were copied and pasted and should not have been admitted into evidence because this is less circumstantial evidence that they are what the government purport[s] them to be." *Id.*

Mr. King's argument fails because, at bottom, he misunderstands what is required to authenticate evidence. Federal Rule of Evidence 901 requires only that the proponent of a piece of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Browne,* 834 F.3d 403 (3d Cir. 2016). Evidence that may be sufficient to meet this burden includes (1) testimony of a witness with knowledge or (2) distinctive characteristics and the like. *See* Fed. R. Evid. 901(b)(1) & (4); *see also Browne*, 834 F.3d at 412 (finding that the "wide range of extrinsic evidence" that was conventionally used to establish authorship for document authentication is equally applicable to the authentication of social media records). Furthermore, the United States Court of Appeals for the Third Circuit has held that the testimony of a records custodian—which is what Mr. King claims the prosecution was required to produce here—is insufficient to authenticate social media communications. *Browne*, 834 F.3d at 408–11. Instead, to authenticate such records, the

6

proponent must produce sufficient evidence from which the trier of fact could conclude, by a preponderance of the evidence, that the piece of evidence is what the proponent says it is, which in this case hinges on the authorship of the social media communications at issue. *Id.* at 409–10 (Rule 901(a), regarding authentication, "treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of Rule 104(b)" and that "to meet the Rule 104(b) standard of sufficiency, the proponent of the evidence must show that 'the jury could reasonably find th[ose] facts … by a preponderance of the evidence.'").

In order to meet its burden at trial in this case, the prosecution presented evidence from Special Agent David Coleman ("SA Coleman"), Special Agent Fina Spory ("SA Spory"), and MV showing that (1) the subject communications (including the videos) were retrieved from MV's phone, (2) that the communications were between MV's accounts and accounts owned by Mr. King (e.g., the "fuckabeatiwastr" account on Snapchat and "Raphael Bloomberg" on Facebook), and (3) that the Snapchat and Facebook communications could not have been sent without the use of the internet. In short, the evidence adduced at trial was more than sufficient to meet the threshold showing required under Rule 901, and a reasonable jury could find it proven beyond a reasonable doubt that (1) Mr. King was the owner of the accounts attributed to him and author of the messages and (2) that the messages retrieved from MV's phone were between her accounts and Mr. King's accounts, and (3) to send/receive those messages an internet connection was required—thereby establishing the necessary interstate commerce nexus.

Next, Mr. King argues that "[t]o prove interstate or foreign commerce for Count [One]…the government would [have] had to produce that the defendant enticed a commercial sex act through the internet. Not one message[,] Snapchat or Facebook[,] mention money for sex, or in other words mentions or persuades any commercial sex act." ECF No. 195 ¶ 2. Mr. King

further contends that MV's testimony that Mr. King paid her for sex "alone should NOT be sufficient to sustain a conviction" and that "[t]he government is also attempting to label me as responsible for every message behind the account without any ip address tieing (sic) me as the author to those messages." *Id.* Finally, Mr. King challenges whether SA Coleman "laid [a] proper foundation as to where" the Snapchat messages came from, given that, according to Mr. King, "he showed no phone extraction report" and that MV only had the phone for a short period of time before she turned it over to law enforcement and could not recall specifically downloading the Snapchat communications to that device. Mr. King in passing suggests these latter points also go to whether the prosecution met its burden of proving Counts Two and Three.

Again, Mr. King's arguments fail. First, Mr. King is incorrect: use of the internet to entice a minor into engaging in a commercial sex act—via a communication seeking a direct quid pro quo exchange—is not a prerequisite to establishing a violation of either 18 U.S.C. § 1591(a) (Count One) or 18 U.S.C. § 2251 (Counts Two and Three). Instead, with respect to the interstate commerce element, as to Count One, the prosecution was required to prove beyond a reasonable doubt that the offense (i.e. causing a minor to engage in a commercial sex act) was in or affecting interstate commerce; for Counts Two and Three, the prosecution was required to prove that either the production of the visual depiction of a minor engaged in sexually explicit conduct involved the use of materials transported in interstate commerce, or that Mr. King knew or had reason to know that the depiction would be transported in interstate commerce, or that the depiction was actually moved in interstate commerce. *See* ECF No. 179 at 24, 31. In its final instructions, the Court correctly charged the jury that "affecting interstate commerce" means, in relevant part, that "the prosecution must prove that Defendant Roderick King's conduct affected interstate commerce in any way, no matter how minimal" and that "[u]sing a facility of interstate commerce affects

interstate commerce. A facility of interstate commerce is some thing, tool, or device that is involved in interstate commerce…the Internet [is a] 'facilit[y]' of interstate commerce." *Id.* at 28–29.

At trial, SA Coleman, SA Spory, and MV testified at length about where the messages were found, their authorship, and content. SA Coleman's testimony established that the messages were found (at least initially) on MV's phone and that an internet connection was required to send/receive them. MV's and SA Spory's testimony established that Mr. King was the author of the messages from the "fuckabeatiwastr" and "Raphael Bloomberg" accounts. Indeed, the prosecution presented to the jury audio recordings of Mr. King providing the log-in details for the "fuckabeatiwastr" account to another individual to have that individual check to see if Mr. King had received any messages from MV and a video depicting Mr. King wearing a sweatshirt with refencing the "fuckabeatiwastr" account. Furthermore, MV testified that Mr. King sent the videos underlying Counts Two and Three to her via Snapchat. And, finally, SA Spory's testimony, in conjunction with Forensic Interview Specialist Jacqueline Block Goldstein's testimony, demonstrated how Mr. King used Snapchat and Facebook messaging to obtain control over MV and induce her to engage in commercial sex acts. In short, the evidence here was more than sufficient to establish the minimum required nexus between Mr. King's conduct and interstate commerce.

Finally, Mr. King argues that "[t]he government could NOT prove interstate or foreign commerce for Count 2 and 3. The government avered [sic] the [two] videos was [sic] recorded with a mobile device manufactured outside the state of PA." ECF No. 195 ¶ 3. According to Mr. King, the prosecution's proof on this point fails because (1) the prosecution did not introduce a photo of the device alleged to have been used to create the videos; (2) the government did not

present any "metadata to show what camera recorded the videos;" (3) the videos were not on Mr. King's device; and (4) that "the government did NOT produce a records custodian to show these [two] video files were sent from one snapchat [sic] account id [sic] to the other." *Id.* Again, Mr. King's argument fails. As noted above, at a minimum, the jury could have found the interstate commerce element of Counts Two and Three to have been satisfied by SA Coleman's testimony that the videos were retrieved from MV's phone in conjunction with MV's testimony that Mr. King sent the underlying videos to her via Snapchat. MV's and SA Coleman's testimony would also suffice to allow the jury to conclude that the videos were recorded with on a cellphone, and, therefore, that the interstate commerce element was satisfied, given SA Coleman's testimony that no such devices are manufactured within the Commonwealth of Pennsylvania. As such, there was sufficient evidence for the jury to conclude the interstate commerce element was met for Counts Two and Three.

In sum, based on the evidence adduced at trial, Mr. King's Motion for Judgment of Acquittal will be denied because the prosecution did not clearly fail to meet its burden of production and the jury's verdict did not "fall below the threshold of bare rationality." *Caballo-Rodriguez*, 726 F.3d at 431; *see also Leon*, 739 F.2d at 890.

## IV.    Conclusion

For the foregoing reasons, Mr. King's (1) Motion to Dismiss [the] Indictment for Rule 5 Violations/Illegal Detention, ECF No. 193, and (2) Motion for Judgment of Acquittal, ECF No. 195, are DENIED.


IT IS SO ORDERED.

DATED this 26th day of July, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc:

RODERICK KING
Inmate 21-01129
Cambria County Prison
425 Manor Drive
Ebensburg, PA 15931

All Counsel of Record via CM/ECF e-mail notification